NOT DESIGNATED FOR PUBLICATION

Nos. 126,580
126,581

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JACOB J. FOX,
*Appellant*.


MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Submitted without oral argument. Opinion filed August 23, 2024. Affirmed in part, reversed in part, and remanded with directions.

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*Ashley McGee*, assistant county attorney, *Marc Goodman*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before GREEN, P.J., GARDNER and PICKERING, JJ.


PER CURIAM:  In this consolidated appeal, Jacob J. Fox challenges the district court's revocation of his probation in Lyon County criminal case Nos. 21CR84 and 21CR245. On appeal, Fox first argues that the district court lacked jurisdiction to revoke his probation in 21CR245. Then, under the assumption that the district court had jurisdiction in that case, Fox argues that the district court violated K.S.A. 22-3716(c)(1)(A)-(C)'s graduated intermediate sanction scheme when revoking his probation in both cases.

1

But Fox's jurisdiction argument contradicts the plain language of the relevant statutes and the prevailing caselaw. Regarding whether the district court violated K.S.A. 22-3716(c)(1)(A)-(C)'s graduated intermediate sanction scheme, a review of the record establishes that the district court violated Fox's protections under K.S.A. 22-3716(c)(1)(A)-(C) when revoking Fox's probation in 21CR84. Yet, this same review establishes that the district court complied with K.S.A. 22-3716(c)(1)(A)-(C) when revoking Fox's probation in 21CR245.

As a result, we hold the following: (1) that the district court had jurisdiction to revoke Fox's probation in 21CR245; (2) that the district court followed the graduated intermediate sanction scheme when revoking Fox's probation in 21CR245; and (3) that the district court violated the graduated intermediate sanction scheme when it revoked Fox's probation in 21CR84. Before the district court, however, Fox admitted that he violated his probation conditions in 21CR84. So, we reverse and remand 21CR84 to the district court for Fox to have a new disposition hearing—but not a new probation violation hearing.

*Background*

On February 22, 2021, the State charged Fox with aggravated assault, a severity level 7 person felony in violation of K.S.A. 21-5412(b)(1) in 21CR84. In its complaint, the State alleged that Fox had threatened someone with a kitchen knife.

On May 17, 2021, after entering into a plea agreement with the State, Fox pleaded no contest to aggravated assault. Under the plea agreement, the State promised to support Fox's sentencing request for probation. Afterwards, at Fox's October 7, 2021 sentencing hearing, the district court followed the parties' sentencing requests, sentencing Fox to 24 months' probation with an underlying 16-month prison sentence followed by 12 months' postrelease supervision.

2

Yet, after Fox entered into his plea agreement with the State in 21CR84, but before the district court sentenced Fox in 21CR84, the State charged Fox with two new crimes and also entered into a plea agreement with Fox as to those new crimes. In 21CR245, the State charged Fox with possessing methamphetamine and possessing drug paraphernalia. Possessing methamphetamine was a severity level 5 drug felony in violation of K.S.A. 21-5706(a), and possessing drug paraphernalia was a class B misdemeanor in violation of K.S.A. 21-5709(b)(2). Under the plea agreement, in exchange for the State dismissing the possession of drug paraphernalia charge, Fox promised to plead no contest to possessing methamphetamine. Although the district court had discretion to sentence Fox to prison, under the plea agreement, the State further promised to support Fox's request that the district court sentence him to probation.

Ultimately, on September 17, 2021, Fox pleaded no contest to possessing methamphetamine. Then, at Fox's November 2, 2021 sentencing hearing, the district court followed the parties' joint sentencing recommendations. For his methamphetamine possession conviction in 21CR245, the district court sentenced Fox to 18 months' probation with an underlying 30-month prison sentence followed by 12 months' postrelease supervision. It ordered Fox to serve his underlying prison sentence in 21CR245 consecutive to his prison sentence in 21CR84. Additionally, the district court gave community corrections discretion to place Fox in a drug abuse treatment program for "up to 18 months" as allowed under K.S.A. 2020 Supp. 21-6824.

Fox had the same intensive supervising officer (ISO) in 21CR84 and 21CR245. Also, Fox's probation conditions in 21CR84 and 21CR245 were largely identical. For both cases, Fox had the following conditions: (1) to not violate the law; (2) to not consume alcohol or illegal drugs; (3) to comply with a curfew; (4) to report to his ISO as directed; (5) to complete all drug tests as directed; and (6) to otherwise comply with his probation conditions. But in 21CR245, Fox had a special condition to participate in and complete Lyon County's Drug Court program. If an offender was ordered to complete the

3

Drug Court program, although community corrections monitored the offender's probation, the Lyon County District Court's special Drug Court division monitored the offender's progress completing a certified drug abuse treatment program as described under K.S.A. 2020 Supp. 21-6824.

Significantly, while Fox's possession of methamphetamine case in 21CR245 was transferred to the special Drug Court division, Fox's aggravated assault case in 21CR84 remained in a traditional division of the Lyon County District Court. So, although Fox was on probation in both 21CR84 and 21CR245 simultaneously, the cases were before different district courts, and thus, had different procedural histories.

On March 29, 2023, Fox's ISO asked Fox to extend his probation terms in both 21CR84 and 21CR245 because he had not timely completed the Drug Court program as required under his 21CR245 probation conditions. In 21CR84, Fox signed an agreement to extend his probation term for six months. In 21CR245, Fox signed an agreement to extend his probation term for 11 months. In both agreements, Fox "acknowledge[d] that [he had] the right to an open hearing before the District Court of Lyon County" but "knowingly, with full understanding [of the modification agreement] waive[d his] rights to: an open hearing on the modification of [his] Order of Probation" as well as the right to counsel, right to be appointed counsel if indigent, the right to call witnesses on his behalf, and the right to present other evidence on his behalf. Two days later, the district court entered orders in 21CR84 and 21CR245 extending Fox's probation terms as stated in his probation modification agreements.

On June 2, 2023, the State filed identical motions to revoke Fox's probation in 21CR84 and in 21CR245 with supporting affidavits written by Fox's ISO. In the ISO's affidavits, the ISO explained that on May 26, 2023, while conducting a curfew check at Fox's residence, Fox admitted that he was currently using methamphetamine. It seems that after Fox admitted that he was using methamphetamine, law enforcement arrested

4

Fox. In both affidavits, the ISO reported that several days after Fox's arrest, the State charged Fox with possessing methamphetamine. The ISO also reported that because of this charge, Fox's case in 21CR245 was "removed unsuccessfully" from Drug Court.

As for Fox's previous probation violations in 21CR84 and 21CR245, the State never moved to revoke Fox's probation in either case until filing the June 2, 2023 revocation motions. In Fox's ISO's affidavit supporting the State's revocation motion in 21CR84, the ISO said that Fox had received jail sanctions in 21CR245. Of note, the record on appeal contains five orders from Drug Court imposing Drug Court sanctions on Fox. In the ISO's affidavit in 21CR84, though, the ISO never mentioned any previous sanctions.

Regardless, on June 14, 2023, the district court held a single probation violation hearing on the State's revocation motions in 21CR84 and 21CR245. At the hearing, the State argued that the district court should revoke Fox's probation in both cases because Fox kept violating his probation conditions. To support its argument, the State relied on Fox's ISO's testimony about Fox's limited success on probation as outlined in his affidavits. Meanwhile, while testifying on his own behalf, Fox confirmed his ISO's testimony that he had admitted to using methamphetamine during the May 26, 2023 curfew check. Still, for both cases, Fox asked the district court to impose an intermediate sanction on him instead of revoking his probation. He told the district court that although he was "struggling with some things," he wanted to succeed and obtain sobriety.

But the district court denied Fox's request, granting the State's motions to revoke his probation. In doing so, the district court emphasized that Fox had violated his probation conditions in 21CR84 and 21CR245 despite community corrections' many efforts to help him succeed on probation. Afterwards, the district court ordered Fox to serve his original underlying sentences in 21CR84 and 21CR245.

Fox timely appealed the revocation of his probation in 21CR84 and 21CR245. After Fox docketed his appeals with this court, this court consolidated Fox's appeals in 21CR84 and 21CR245—now appeal Nos. 126,580 and 126,581, respectively.

I. *Did the district court have jurisdiction to revoke Fox's probation in Lyon County criminal case No. 21CR245?*

Fox's first argument on appeal is that the agreement he entered in 21CR245 that extended his probation 11 months was unenforceable because it violated K.S.A. 21-6608(c)(8). Relying on this assertion, Fox concludes that the district court lacked jurisdiction to revoke his probation in 21CR245 on June 14, 2023, because he completed his probation term in 21CR245 as originally projected on May 1, 2023. Fox's entire argument hinges on the premise that even when an offender enters an agreement in which he or she voluntarily, knowingly, and understandingly waives his or her rights associated with a probation modification hearing discussed in K.S.A. 21-6608(c)(8), that offender's waiver is invalid under that statute's plain language.

While arguing that the district court lacked jurisdiction to revoke his probation in 21CR245, Fox acknowledges this court's holding in *State v. McCreary*, 32 Kan. App. 2d 814, 815, 89 P.3d 659 (2004), which directly contradicts his interpretation of K.S.A. 21-6608(c)(8). In *McCreary*, this court held that an offender may waive his or her rights in K.S.A. 2003 Supp. 21-4611(c)(8)—the provision that has since been recodified as K.S.A. 21-6608(c)(8)—if certain conditions are met. Despite this recognition, Fox "urges this Court to review" the *McCreary* court's holding because it contradicts K.S.A. 21-6608(c)(8)'s plain language.

In response, the State contends that Fox misinterprets K.S.A. 21-6608(c)(8). It stresses that K.S.A. 22-3716(b)(2) explicitly states that an offender may waive his or her right to a probation modification hearing "after being apprised of the right to a hearing."

6

It stresses that Fox's probation modification agreement listed the rights that Fox was waiving by signing the agreement. It stresses that on March 31, 2023, the district court electronically signed the probation modification agreement, which made the conditions within the agreement official orders of the court. In addition, although Fox asks this court to interpret K.S.A. 21-6608(c)(8) differently than the *McCreary* court, the State notes that in *State v. Freeman*, 32 Kan. App. 2d 1027, 1030, 93 P.3d 1223, *rev. denied* 278 Kan. 848 (2004), this court reaffirmed the *McCreary* court's interpretation of K.S.A. 21-6608(c)(8). Like the *McCreary* court, the *Freeman* court held that an offender, after being apprised of the rights he or she was waiving by not having a probation modification hearing, may enter an enforceable agreement to modify his or her probation conditions.

Simply put, a review of the applicable statutes and this court's caselaw supports the State's position. Fox's probation modification agreement in 21CR245, which the district court electronically signed as an order of the court, was enforceable. As a result, this enforceable agreement extended Fox's probation 11 months. This, in turn, means that when the district court revoked Fox's probation in 21CR245, it did so well within Fox's extended probation term. Thus, we reject Fox's argument that the district court lacked jurisdiction to revoke his probation in 21CR245.

*Preservation*

As an initial point, before making his underlying jurisdiction argument, Fox addresses whether he adequately preserved his argument for appeal since he did not challenge the district court's jurisdiction below. To support his argument, Fox cites *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019), which repeats the well-known rule that a party may challenge the existence of subject matter jurisdiction at any time, including for the first time on appeal. *State v. Jordan*, 317 Kan. 628, 641-42, 537 P.3d 443 (2023); *State v. Clark*, 313 Kan. 556, 560, 486 P.3d 591 (2021); *Tucker v. Tucker*, 97 Kan. 61, 62, 154 P. 269 (1916). Indeed, our Supreme Court's longstanding precedent

7

establishes that an appellate court has a duty to sua sponte raise any jurisdictional issues discovered during its review of the record on appeal. See *Clark*, 313 Kan. at 560; *Tucker*, 97 Kan. at 62. Hence, even if parties never realize that a jurisdiction issue exists, this court must address potential jurisdiction problems that it discovers during the parties' appeal. So, Fox's jurisdiction argument is properly before this court.

*Applicable Law*

Here, Fox's jurisdiction argument concerns the statutory validity of the probation modification agreement in 21CR245. Both jurisdiction and statutory interpretation issues are questions of law over which this court has unlimited review. *State v. Delacruz*, 307 Kan. 523, 529, 411 P.3d 1207 (2018). Thus, this court has unlimited review over Fox's arguments why the district court lacked jurisdiction to revoke his probation in 21CR245.

While engaging in statutory interpretation, additional rules govern this court's review of the parties' arguments. The most important rule when interpreting a statute is that the intent of our Legislature governs this court's interpretation if that intent is ascertainable. When trying to deduce our Legislature's intent, this court must first review the statute's plain language. *State v. Ayers*, 309 Kan. 162, 164, 432 P.3d 663 (2019). In doing so, this court is required to interpret the statute's words as commonly understood. Likewise, this court will not read language into the statute that does not exist under the statute's plain language. 309 Kan. at 164. Also, if the plain language of the statute is clear and unambiguous, then this court must interpret the statute as intended under its plain language. This means that unless the language of the contested statute is ambiguous, this court will not rely on the canons of statutory construction to interpret a statute's meaning. 309 Kan. at 164.

Fox's underlying jurisdiction argument involves K.S.A. 21-6608(c)(8), K.S.A. 22-3716(b)(2), and K.S.A. 22-3716(c)(1)(A)-(C). Additionally, the parties' arguments involve this court's *McCreary* and *Freeman* decisions.

K.S.A. 21-6608(c)(8) states: "[T]he court may modify or extend the offender's period of supervision, pursuant to a modification hearing and a judicial finding of necessity." The word modification is broad enough to include an extension of an offender's probation term. Put another way, when a district court extends an offender's probation, it necessarily modifies the offender's probation conditions. So, K.S.A. 21-6608(c)(8)'s plain language provides that the district court has the authority to modify an offender's probation conditions if the district court holds a modification hearing at which it finds that modifying the offender's probation conditions is necessary.

K.S.A. 22-3716(b)(2) states: "Unless the defendant, after being apprised of the right to a hearing by the supervising court services or community correctional services officer, waives such hearing, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charged." In consequence, the plain language of K.S.A. 22-3716(b)(2) requires the district court to hold a hearing on an offender's alleged probation violation absent a knowing waiver of his or her right to and rights associated with such hearing.

Because Fox pleaded no contest to aggravated assault in 21CR84 and no contest to possessing methamphetamine in 21CR245, K.S.A. 22-3716(c)(1) controlled what sanctions the district court could impose on Fox. Under subsection (c)(1)(A), the district court has discretion to modify an offender's probation conditions or extend an offender's probation term once "a [probation] violation is established." K.S.A. 22-3716(c)(1)(A). And as considered in greater detail later, K.S.A. 22-3716(c)(1)(B)-(C) outlines more severe sanctions that the district court may impose on an offender under the graduated intermediate sanction scheme. So, the preceding provisions of K.S.A. 22-3716 support

9

the following: (1) that offenders may waive their rights to a probation modification hearing; (2) that to be a valid waiver, before waiving their rights to a probation modification hearing, the offenders must be "apprised of the right" to and associated with the modification hearing; and (3) that after a probation violation is established, the district court has the authority to sanction offenders according to K.S.A. 22-3716(c)(1)(A)-(C)'s graduated intermediate sanction scheme.

Next, both the *McCreary* and *Freeman* courts interpreted the provision now codified under K.S.A. 21-6608(c)(8). From the outset, it is important to stress that although Ryan McCreary's probation modification agreement mentioned K.S.A. 22-3716 when explaining McCreary's waiver of rights, the *McCreary* court never relied on K.S.A. 22-3716 to interpret K.S.A. 21-6608(c)(8). 32 Kan. App. 2d at 815. Similarly, the *Freeman* court never mentioned K.S.A. 22-3716 in its analysis.

In any case, in *McCreary*, McCreary argued that the district court violated K.S.A. 21-6608(c)(8)'s plain language because it never held a probation modification hearing at which it found that extending his probation was necessary. But this court rejected McCreary's argument. 32 Kan. App. 2d at 814-15. In affirming the validity of McCreary's probation modification agreement, this court emphasized the following: (1) that the agreement explained why McCreary's probation was being extended; (2) that the agreement listed the rights McCreary was waiving under K.S.A. 21-6608(c)(8); (3) that McCreary acknowledged that he was knowingly and understandingly waiving these rights; (4) that McCreary never challenged the voluntariness of his waiver; and (5) that the district court approved McCreary's probation modification agreement before McCreary's original probation term had expired. 32 Kan. App. 2d at 815-16. Under the preceding facts, this court held that McCreary's waiver satisfied K.S.A. 21-6608(c)(8)'s "'modification hearing and a judicial finding of necessity' requirements." 32 Kan. App. 2d at 816.

10

Similarly, in *Freeman*, Frank Freeman argued "that he was denied his right to due process because the order extending his probation was entered without the benefit of a hearing" as stated by K.S.A. 21-6608(c)(8). 32 Kan. App. 2d at 1028. The agreement Freeman signed to extend his probation term simply stated (1) that Freeman agreed to the modification and (2) that Freeman understood that he had "'a right to seek counsel in this matter.'" 32 Kan. App. 2d at 1029. Because Freeman's agreement "wholly omit[ted] the crucial information that Freeman was entitled to a hearing and a judicial finding of necessity before his probation could be extended," this court held that Freeman's probation modification agreement was unenforceable. 32 Kan. App. 2d at 1030.

*Analysis*

This court can consider identical issues but reach different decisions. *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018). So, this court is not bound to follow either the *McCreary* or the *Freeman* courts' interpretation of K.S.A. 21-6608(c)(8).

But why should this court interpret K.S.A. 21-6608(c)(8) differently than the *McCreary* and *Freeman* courts? In Fox's analysis, he mostly quotes statutory language under K.S.A. 22-3716. He never addresses the *Freeman* decision—a decision for which our Supreme Court denied review. Also, a critical part of Fox's argument about the enforceability of his probation modification agreement involves the district court's electronic signature. He argues that the electronic signature on his probation modification agreement did not make his agreement an order of the court. Instead, for his agreement to be an enforceable court order, Fox insists that the district court needed to hold a modification hearing at which it found that extending his probation was necessary; he insists that regardless of any waiver, this is a procedural requirement. Nevertheless, in making this argument, Fox includes no discussion why his interpretation of K.S.A. 21-6608(c)(8) is the correct interpretation. Rather, he assumes that his interpretation of K.S.A. 21-6608(c)(8) is correct. He supports his interpretation by pointing out that many

subsections of K.S.A. 22-3716 do not address whether an offender may waive his or her modification hearing rights. In short, he avoids the necessary statutory analysis of K.S.A. 21-6608(c)(8) by raising strawman arguments about what irrelevant subsections of K.S.A. 22-3716 do not establish. The strawman ploy is used when parties wish to respond to an argument of their choosing and not one that actually is presented.

Also, although Fox, in his appellate brief, urges this court to interpret K.S.A. 21-6608(c)(8) differently than the *McCreary* court, Fox's reasoning is devoid of any discussion on the *McCreary* court's actual statutory interpretation. He never explains why the *McCreary* court's holding that an offender who voluntarily, knowingly, and understandingly waives his or her rights to and associated with a probation modification hearing under K.S.A. 21-6608(c)(8) may enter an agreement modifying the conditions of his or her probation. Indeed, after urging this court to reconsider the *McCreary* court's statutory interpretation, Fox never mentions the *McCreary* decision again.

By ignoring the *McCreary* court's analysis of K.S.A. 21-6608(c)(8), though, Fox conveniently avoids addressing that the waiver language in his modification agreement is nearly identical to the waiver language in McCreary's modification agreement that this court held enforceable. See *McCreary*, 32 Kan. App. 2d at 815. Both McCreary's and Fox's probation modification agreements stated that they were voluntary, knowingly, and understandingly waiving the following rights:  (1) the right to a probation modification hearing; (2) the right to counsel; (3) the right to appointed counsel if indigent; (4) the right to call witnesses on their own behalf; and (5) the right to present other evidence on their own behalf. The only substantive difference between McCreary's and Fox's agreements is that in McCreary's agreement, he also acknowledged that if he had a modification hearing, his ISO or the State "*may* [be] require[d] . . . to put on strict proof as to why [his] Order of Probation should be extended, in accordance with K.S.A. 22-3716." (Emphasis added.) 32 Kan. App. 2d at 815.

12

In ignoring the *McCreary* court's analysis of K.S.A. 21-6608(c)(8), Fox also conveniently avoids addressing that like McCreary, he readily admits that he voluntarily entered the modification agreement with full understanding of the agreement's provisions. He ignores that he has never argued that he was treated unfairly by his attorney, the State, or the district court. Thus, just like the *McCreary* court explained when describing McCreary's argument, Fox "simply argues that for the waiver to be valid, it must occur at a modification hearing before the trial court where a judicial finding of necessity is made." 32 Kan. App. 2d at 815.

To summarize, the underlying facts of Fox's case are very similar to McCreary's case. In addition to signing probation modification agreements with mostly identical waiver language, like McCreary, Fox does not challenge (1) that he voluntarily, knowingly, and understandingly entered the probation modification agreement or (2) that the district court electronically signed the modification agreement with the intention of making the modification agreement an official court order. See 32 Kan. App. 2d at 815. All the same, Fox includes no analysis why this court should depart from the *McCreary* court's interpretation of K.S.A. 21-6608(c)(8). Hence, Fox never explains why his interpretation of K.S.A. 21-6608(c)(8) is correct and the *McCreary* court's interpretation of K.S.A. 21-6608(c)(8) is wrong. Thus, we note that although this court must sua sponte address potential jurisdiction issues, Fox has inadequately briefed his complaints about the *McCreary* decision. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (not showing why an argument is sound despite contrary authority is akin to inadequately briefing the issue).

It is also worth pointing out that since the parties filed their briefs with this court, in *State v. Stokes*, No. 126,059, 2024 WL 1477136 (Kan. App. 2024) (unpublished opinion), *petition for review filed* June 12, 2024, this court addressed and rejected Fox's identical jurisdiction argument. In *Stokes*, Jennifer Stokes' ISO asked Stokes to enter the probation modification agreement because she had not timely completed a drug abuse

treatment program, which was a condition of her probation. 2024 WL 1477136, at *1. In rejecting Stokes' argument, the *Stokes* court emphasized that Stokes' waiver of her probation violation hearing and agreement to extend her probation term satisfied K.S.A. 22-3716(c)(1)(A)'s procedural requirements:

> "In granting the continuations or extensions of probation in this case, we find that the district court appropriately relied on Stokes' acknowledgment that she had 'not successfully completed the Drug Court program' as required as a condition of her probation. We also find that the district court appropriately relied on Stokes' agreement to extend her probation for a period of 12 months . . . or upon successful completion of all requirements of the Drug Court program prior to that time. Consequently, we conclude that the district court had the statutory authority under K.S.A. 22-3716(c)(1)(A) to continue or extend the term of Stokes' probation and that it continued to have jurisdiction over Stokes personally when it ultimately revoked her probation in January 2023." 2024 WL 1477136, at *3.

Then, the *Stokes* decision supports that a district court may rely on an offender's probation modification agreement to extend that offender's probation terms while also satisfying K.S.A. 21-6608(c)(8)'s procedural requirements. Also, according to the *Stokes* court's analysis, to meet those procedural requirements, the offender's probation modification agreement needs to include only two things: (1) the offender's acknowledgement that he or she made a voluntary, knowing, and understanding waiver of his or her rights to and associated with a probation modification hearing under K.S.A. 21-6608(c)(8); and (2) the offender's acknowledgment that he or she committed a probation violation. 2024 WL 1477136, at *2.

As a final point, neither Fox, the State, nor the *Stokes* court address a significant amendment that concerns K.S.A. 21-6608(c)(8) that our Legislature enacted after this court decided the *McCreary* and *Freeman* cases. Because K.S.A. 21-6608(c)(8)'s plain language is unambiguous, neither Fox nor the State needed to consider legislation related

14

to K.S.A. 21-6608(c)(8) to make their respective arguments. Even more so, under this court's standard of review, the *Stokes* court reasonably limited its statutory interpretation to K.S.A. 21-3716's unambiguous language. See *State v. Pulliam*, 308 Kan. 1354, 1364, 430 P.3d 39 (2018) (this court should not review the legislative history of a statute to determine its meaning if its meaning is unambiguous under its plain language).

Nevertheless, recognizing that our Legislature made a relevant statutory amendment *after* this court decided the *McCreary* and *Freeman* cases is distinguishable from reviewing our Legislature's amendments *before* this court decided *McCreary* and *Freeman*. Considering the amendment after this court decided *McCreary* and *Freeman*, such review allows this court to determine whether the *McCreary* and *Freeman* courts' statutory interpretation of K.S.A. 21-6608(c)(8) remains sound. Also, although the State never recognizes that it relies on the amendment—an amendment to subsection (b)(2) of K.S.A. 22-3716—it does rely on the amendment to support its interpretation of K.S.A. 21-6608(c)(8). So, under the specific facts of this case, recognizing and considering the amendment to K.S.A. 22-3716(b)(2) is necessary.

With that said, this court decided both the *McCreary* and *Freeman* decisions in 2004. As mentioned earlier, in their respective analyses, neither the *McCreary* nor the *Freeman* courts considered K.S.A. 22-3716. Perhaps this is because in 2004, K.S.A. 22-3716 had no language about waiving a probation hearing. It was not until 2013 that our Legislature amended K.S.A. 22-3716(b)(2) to say that an offender must have a violation hearing unless the offender "after being apprised of the right to a hearing by the supervising court services or community correctional services officer, waives such hearing." L. 2003, ch. 135, § 6; L. 2013, ch. 76, § 5. In summary, because the 2013 amendment to K.S.A. 22-3716(b)(2) added language that an offender may waive his or her right to a violation hearing, the *McCreary* and the *Freeman* courts' holdings remain reasonable interpretations of K.S.A. 21-6608(c)(8).

15

*Conclusion*

Fox's argument that the district court lacked jurisdiction to revoke his probation in 21CR245 is unpersuasive. Fox urges this court to reject the *McCreary* court's holding that an offender may waive his or her rights under K.S.A. 21-6608(c)(8) to a probation modification hearing at which the district court finds that modifying the offender's probation conditions is necessary. But Fox never discusses the *McCreary* court's statutory interpretation supporting its holding. Instead, Fox makes several fallacious arguments about why his probation modification agreement in 21CR245 violates K.S.A. 21-6608(c)(8) and is unauthorized under irrelevant subsections of K.S.A. 22-3716. Additionally, the plain language of K.S.A. 21-6608(c)(8) and K.S.A. 22-3716 establishes that as long as an offender is apprised of the rights associated with a modification hearing that he or she is waiving, then an offender may modify the conditions of his or her probation by agreement without ever having a modification hearing at which the district court makes a finding that this modification is judicially necessary as stated under K.S.A. 21-6608(c)(8). The district court needs to approve only the agreement by making it a court order.

As a result, the district court's order approving Fox's agreement to extend his probation in 21CR245 for 11 months was enforceable. In turn, we hold that the district court had jurisdiction to revoke Fox's probation in 21CR245 while he was serving his extended probation term.

II. *Did the district court err by revoking Fox's probation in Lyon County District Court case Nos. 21CR84 and 21CR245?*

Fox's remaining argument is that the district court violated K.S.A. 22-3716(c)(1)(A)-(C)'s graduated intermediate sanction scheme when revoking his probation in 21CR84—his aggravated assault case—and 21CR245—his possession of methamphetamine case. In addition to explaining why no exception under K.S.A. 22-

16

3716(c)(7) allowed the district court to immediately revoke his probation in either case, Fox asserts that the record on appeal establishes that the district court imposed no intermediate sanctions on him in 21CR84 or 21CR245. To support his argument, Fox asks this court to review his probation revocation journal entries of judgment in 21CR84 and 21CR245. He emphasizes that in those journal entries, although there is a section with boxes that the district court should mark to report an offender's previously imposed intermediate sanctions, the district court marked none of those boxes on his journal entries.

As for his Drug Court sanctions, Fox recognizes that he was sanctioned by the Drug Court. Yet, he contends that Drug Court sanctions do not constitute intermediate sanctions under K.S.A. 22-3716(c)(1)(A)-(C)'s graduated intermediate sanction scheme. He asserts that proceedings in Drug Court are less formal. He contends that nothing in the record on appeal addresses the procedures the Drug Court used when imposing the sanctions.

For the first time on appeal, Fox contends that "the record is devoid of any indication that [he] was afforded . . . minimal due process rights when receiving his [D]rug [C]ourt sanctions." Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Pearce*, 314 Kan. 475, 484, 500 P.3d 528 (2021). And the State challenges Fox's constitutional due process argument. The State contends that Fox has failed to direct this court to where in the record on appeal that his due process argument was preserved. We agree.

*Preservation*

There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally

determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. *Johnson*, 309 Kan. at 995. In *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015), and *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), our Supreme Court warned that Supreme Court Rule 6.02(a)(5) would be strictly enforced, and litigants who failed to comply with this rule risked a ruling that the issue is improperly briefed, and the issue will be deemed waived or abandoned. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

Fox does not argue in his appellate brief that any of his constitutional due process arguments fit within any of the beforementioned three exceptions. Thus, because of Fox's omissions under the above-mentioned rule, we will not consider his constitutional due process argument for the first time on appeal and will deem it abandoned.

In the State's opening discussion, the State addresses whether Fox's Drug Court sanctions in 21CR245 *also constituted previously imposed intermediate sanctions against Fox in 21CR84*. The State contends that any sanction imposed on Fox through the Drug Court in 21CR245 also constituted an intermediate sanction for purposes of Fox's probation in 21CR84. The State supports this argument by citing to K.S.A. 22-3716(c)(8), which explains when the district court must impose concurrent probation terms.

Regarding Fox's probation revocation journal entries in 21CR84 and 21CR245, the State responds that although Fox's journal entries suggest that Fox had not served any intermediate sanctions before the district court revoked Fox's probation in those cases, the Drug Court had imposed several sanctions on Fox. It says that Fox's October 5, 2022

18

probation violation hearing before the Drug Court proves that the Drug Court imposed a three-day jail sentence as an intermediate sanction on Fox in 21CR245 for violating his curfew condition and having a fake urine kit in his apartment.

As considered later, the answer to whether the sanctions imposed by the Drug Court constituted intermediate sanctions under K.S.A. 22-3716(c)(1) involves substantial statutory interpretation. But in the end, the record on appeal supports the State's argument. When the district court entered the order extending Fox's probation for not timely completing Drug Court per Fox's probation modification agreement with the State, it modified Fox's probation condition, which satisfied the first step of the graduated intermediate sanction scheme under K.S.A. 22-3716(c)(1)(A). Then, when the Drug Court sanctioned Fox by ordering him to write a letter and serve a three-day jail sentence for a probation violation in 21CR245, this sanction satisfied the second step of the graduated intermediate sanction scheme under K.S.A. 22-3716(c)(1)(B) as to his probation in 21CR245. So, in 21CR245, once Fox admitted to violating his probation at his violation hearing by using methamphetamine as alleged by his ISO, the district court had statutory authority to revoke Fox's probation in 21CR245 under K.S.A. 22-3716(c)(1)(C), the third and final step of the graduated intermediate sanction scheme.

At the same time, it is readily apparent that the district court erred when it revoked Fox's probation in 21CR84. Regardless of whether Fox's Drug Court sanctions also constituted intermediate sanctions for purposes of Fox's probation in 21CR245, those intermediate sanctions did not automatically constitute intermediate sanctions for purposes of Fox's probation in 21CR84. In both 21CR84 and 21CR245, Fox had distinct rights under K.S.A. 22-3716. To ensure Fox's rights were not violated in 21CR84 and 21CR245, the district court needed to follow K.S.A. 22-3716(c)(1)(A)-(C)'s graduated intermediate sanction scheme in each case before legally revoking Fox's distinct probation terms. The record in 21CR245 indicates that Fox received a single intermediate sanction before the district court revoked his probation. Thus, although we affirm the

19

district court's revocation of Fox's probation in 21CR245 for his possession of methamphetamine case, we reverse the district court's revocation of Fox's probation in 21CR84 for his aggravated assault case.

The State contends that this court cannot consider Fox's probation revocation argument because in 21CR245, Fox never appealed when the Drug Court imposed the disputed Drug Court sanctions on him. Fox counterargues that he preserved his probation revocation arguments for this court's review because at his joint probation violation hearing, he asked the district court to impose intermediate sanctions on him rather than revoke his probation in both cases.

The State's preservation argument misinterprets Fox's probation revocation challenges. Fox is not challenging the validity of his Drug Court sanctions as contended by the State. Instead, he is challenging (1) whether his Drug Court sanctions constitute intermediate sanctions under K.S.A. 22-3716(c)(1)(A)-(C)'s graduated intermediate sanction scheme, and (2) if so, whether his intermediate sanctions in 21CR245 from Drug Court also constituted intermediate sanctions in 21CR84. So, Fox has preserved his probation revocation arguments for this court's review.

*Applicable Law*

"Where the issue is the propriety of the sanction imposed by the trial court for a probationer's violation of the terms and conditions of probation, the standard of review is an abuse of discretion. [Citation omitted.]" *State v. Coleman*, 311 Kan. 332, 334, 460 P.3d 828 (2020). A district court abuses its discretion whenever it makes an error of law, an error of fact, or an otherwise unreasonable decision. *Ayers*, 309 Kan. at 165. Here, however, Fox's probation revocation arguments all involve whether the district court followed the correct statutory procedures when revoking his probation. Again, issues involving statutory interpretation are questions of law over which this court has unlimited

20

review. *Delacruz*, 307 Kan. at 529. Hence, Fox's specific probation revocation arguments before this court allow it to exercise unlimited review.

K.S.A. 2020 Supp. 21-6824(a) established certified drug abuse treatment programs as a nonprison sanction for certain offenders sentenced to probation. At the Lyon County District Court, a Drug Court division oversaw the probation proceedings of an offender ordered to complete a certified drug abuse treatment program as a condition of his or her probation. In 21CR245, Fox pleaded no contest to possessing methamphetamine. As previously explained, an offender convicted of possessing a controlled substance qualifies for admission to a certified substance drug abuse treatment program. See K.S.A. 2020 Supp. 21-6824(a); K.S.A. 21-5706(a). As a result, Fox qualified for entry into a drug abuse treatment program in 21CR245. See K.S.A. 21-5706(a).

Like other offenders on probation, an offender in the treatment program is "supervised by community correctional services." K.S.A. 2020 Supp. 21-6824(d)(1). Also, like other offenders on probation, an offender in the treatment program may be discharged for probation violations. K.S.A. 2020 Supp. 21-6824(f)(1). In Fox's ISO's affidavit attached to the State's probation revocation motions in 21CR84 and 21CR245, Fox's ISO stated that Fox "was removed from the Drug Court program . . . for his continued violations of program rules." Subsection (f)(1) of K.S.A. 2020 Supp. 21-6824 states that an offender "in drug abuse treatment programs shall be discharged from such program if the offender:  (A) Is convicted of a new felony; or (B) has a pattern of intentional conduct that demonstrates the offender's refusal to comply with or participate in the treatment program, as established by judicial finding." Although it is not entirely clear, it seems that the Drug Court discharged Fox because he continued to violate the rules in his drug abuse treatment program as stated in K.S.A. 2020 Supp. 21-6824(f)(1)(B).

Notably, K.S.A. 2020 Supp. 21-6824(f)(2) states that any "[o]ffenders who are discharged from such program shall be subject to revocation provisions of K.S.A. 2020 Supp. 21-6604(n)." So, K.S.A. 2020 Supp. 21-6824(f)(2) directs the district court to K.S.A. 2020 Supp. 21-6604(n)(2) for the procedural rules on revoking the probation of an offender discharged from a drug abuse treatment program. Nevertheless, K.S.A. 2020 Supp. 21-6604(n)(2) states the following:

"If the defendant fails to participate in or has a pattern of intentional conduct that demonstrates the defendant's refusal to comply with or participate in the treatment program, as established by judicial finding, *the defendant shall be subject to sanction or revocation pursuant to the provisions of K.S.A. 22-3716*, and amendments thereto. *If the defendant's probation is revoked*, the defendant shall serve the underlying prison sentence as established in K.S.A. 21-6805, and amendments thereto." (Emphases added.)

So, although K.S.A. 2020 Supp. 21-6824(f)(2) directs the district court to K.S.A. 21-6604(n)(2) for the correct probation violation hearing procedures at a Drug Court hearing, K.S.A. 21-6604(n)(2) states that the district court should turn to K.S.A. 22-3716 for the correct probation violation hearing procedures. As a result, taken together, the plain language of K.S.A. 2020 Supp. 21-6824(f)(2) and K.S.A. 21-6604(n)(2) establishes that when the Drug Court considers sanctioning or revoking an offender's probation, it must follow K.S.A. 22-3716's procedures. This means that the State's argument that the Drug Court sanctions also constituted intermediate sanctions under K.S.A. 22-3716(c)(1)(A)-(C)'s graduated intermediate sanction scheme in Fox's probation for his methamphetamine conviction in 21CR245 is correct.

Also, it is important to note that K.S.A. 21-6604(n)(2) states that a district court may sanction or revoke an offender's probation. Because K.S.A. 21-6604(n)(2) explicitly states that an offender "shall be subject to *sanction or revocation*," the plain language of subsection (n)(2) supports the following:  (1) that being discharged from a drug abuse treatment program is a probation violation in and of itself; (2) that being discharged from

22

a drug abuse treatment program does not result in the automatic revocation of an offender's probation; and (3) that K.S.A. 22-3716's probation revocation rules define what punishment a district court may impose on an offender who has been discharged from a drug abuse treatment program. (Emphasis added.)

Once more, K.S.A. 22-3716(c)(1)(A)-(C) outlines what graduated intermediate sanctions that the district court must impose on an offender who committed a felony "other than a felony specified in K.S.A. 21-6804(i)," absent some exception. Because neither aggravated assault nor possession of methamphetamine are crimes under K.S.A. 21-6804(i), K.S.A. 22-3716(c)(1) controls what sanctions the district court may impose after "a violation is established." Subsection (c)(1)(A) states that the district court may continue or modify the release conditions of an offender's nonprison sanctions. Subsection (c)(1)(B) states that the district court may continue or modify the release conditions of an offender's nonprison sanction *and* impose a two-day or three-day jail sentence. Lastly, subsection (c)(1)(C) states that the district court may revoke an offender's probation if he or she has already served an intermediate sanction under subsection (c)(1)(B) for a violation related to his or her underlying conviction. Thus, the plain language of K.S.A. 22-3716(c)(1)(A)-(C)'s graduated intermediate sanction scheme provides that a district court cannot revoke an offender's probation under (c)(1)(C) without first imposing an intermediate sanction on the offender under (c)(1)(B).

There are exceptions allowing the district court to immediately revoke an offender's probation once the district court makes a probation violation finding. K.S.A. 22-3716(c)(7) lists four exceptions allowing a district court to bypass the graduated intermediate sanction scheme. When the district court revoked Fox's probation in 21CR84 and 21CR245, though, the district court never suggested that it was revoking Fox's probation terms under an exception. Rather, it focused on how Fox had failed to take advantage of the many services that community corrections had provided him. On appeal, the State never asserts that an exception applies. Also, in his appellate brief, Fox

raises several arguments why none of the exceptions allowing the district court to bypass the graduated intermediate scheme existed. Thus, it is undisputed that K.S.A. 22-3716(c)(7)'s exceptions have no bearing on this appeal.

Next, K.S.A. 22-3716(g) specifically addresses probation violations committed by an offender in a drug abuse treatment program. It states that an offender in the treatment program who violates a condition of the program "*shall be subject to an additional nonprison sanction for any such subsequent violation.*" (Emphasis added.) K.S.A. 22-3716(g). It further states that "[s]uch nonprison sanctions shall include, but not be limited to, up to 60 days in a county jail, fines, community service, intensified treatment, house arrest and electronic monitoring." K.S.A. 22-3716(g). Our Legislature, by stating that an offender in a drug abuse treatment program receives an additional nonprison sanction for his or her probation violation, implied that when the district court sanctions an offender in a treatment program, it does so twice. Yet, what sanction must this "additional nonprison sanction" be in addition to?

In this respect, K.S.A. 22-3716(g) is ambiguous. Nevertheless, one rule of statutory construction is to interpret statutory provisions reasonably to avoid unreasonable results. *State v. Smith*, 311 Kan. 109, 114, 456 P.3d 1004 (2020). Relatedly, "[w]hen construing a statute, [this court] must 'consider various provisions of an act in pari materia with a view of reconciling and bringing those provisions into workable harmony if possible.'" 311 Kan. at 114. Here, K.S.A. 22-3716 governs what sanctions that the district court may impose on an offender after a probation violation finding. Hence, subsection (g)'s ambiguous language falls under the statute controlling what sanctions that the district court may impose on an offender for violating his or her probation. So, the context of subsection (g)'s language strongly suggests that this "additional nonprison sanction" is in addition to a sanction listed under K.S.A. 22-3716(c)(1)(A)-(C)'s graduated intermediate sanction scheme. See K.S.A. 22-3716(g).

24

Additionally, as just outlined, K.S.A. 2020 Supp. 21-6824(f)(2) directs the district court to K.S.A. 21-6604(n)(2) for the procedural rules on revoking the probation of an offender who is in a drug abuse treatment program. But then, K.S.A. 21-6604(n)(2) directs the district court to K.S.A. 22-3716. Subsection (n)(2) of K.S.A. 21-6604 states that "the defendant shall be subject to sanction or revocation pursuant to the provisions of K.S.A. 22-3716, and amendments thereto." See *State v. Dye*, No. 119,472, 2018 WL 6715384, at *3 (Kan. App. 2018) (unpublished opinion) (citing K.S.A. 21-6824[f][2] and K.S.A. 21-6604[n][2] as requiring the district court to apply K.S.A. 22-3716[c][1][A]-[C]'s graduated intermediate sanction scheme on an offender in a drug abuse treatment program who violated his or her probation conditions). As a result, the preceding statutory language establishes that when the district court sanctions an offender who is participating in a drug abuse treatment program, the district court's sanctions must comply with K.S.A. 22-3716(c)(1)(A)-(C)'s graduated intermediate sanction scheme. Under the facts of this case, this means that when the Drug Court sanctioned Fox for violating his probation in 21CR245, the Drug Court had to follow K.S.A. 22-3716(c)(1)(A)-(C)'s procedures.

K.S.A. 22-3716(c)(8) states that "[i]f an offender is serving multiple probation terms concurrently, any violation sanctions imposed pursuant to subsection (c)(1), or any sanction imposed pursuant to subsection (c)(9), shall be imposed concurrently." The phrase "multiple probation terms concurrently" is ambiguous. The phrase, by itself, does not clearly state whether it applies to an offender serving multiple terms of probation for multiple convictions within a single criminal case concurrently or whether it applies to an offender serving multiple terms of probation for convictions in different criminal cases concurrently. As discussed in greater detail later, in *State v. Allen*, 55 Kan. App. 2d 87, 89-90, 407 P.3d 661 (2017), this court held that an offender is serving concurrent probation terms as meant under this subsection if that offender is serving those terms at the same time.

*Analysis*

To review, in the State's opening argument, it addresses whether Fox's Drug Court sanctions for his probation in 21CR245 also constituted previously imposed intermediate sanctions against Fox for his probation in 21CR84. Relying on K.S.A. 22-3716(c)(8), it argues that this court may consider the district court's revocation of Fox's probation in 21CR84 and 21CR245 together because Fox was serving his probation terms in those cases concurrently. According to the State's analysis, concurrent probation terms include when an offender is serving probation terms in two different criminal cases simultaneously. Relying on this conclusion, it then contends that any sanction imposed on Fox in 21CR245 was automatically imposed on Fox in 21CR84 because he was serving those probation terms simultaneously.

Because Fox's probation revocation arguments in 21CR84 and 21CR245 are related, this court consolidated Fox's cases for appeal. It is important to stress, though, that other than Fox's joint probation violation hearing in 21CR84 and 21CR245, Fox's cases remained separate before the district court. He had different, albeit similar, probation conditions. He had different projected probation termination dates. And the preceding differences meant that Fox's progress completing his probation in 21CR84 and 21CR245 differed.

In any case, Fox's record on appeal in 21CR245 includes five orders imposing sanctions from the Drug Court. Fox's record on appeal in 21CR84 includes nothing of the sort. Rather, it indicates that the district court never imposed an intermediate sanction on Fox for violating his probation in 21CR84 other than when the district court extended Fox's probation based on his probation modification agreement. Fox's admission to violating his probation and the district court's resulting modification satisfied the intermediate sanction requirements of K.S.A. 22-3716(c)(1)(A). See *Stokes*, 2024 WL 1477136, at *3 (district court had authority under K.S.A. 22-3716[c][1][A] to extend

26

Stokes' probation based on Stokes' admissions within her probation modification agreement). But if the district court imposed only one intermediate sanction on Fox, and it was under subsection (c)(1)(A), it necessarily follows that the State successfully moved to revoke Fox's probation in 21CR84 before the district court modified Fox's probation conditions and ordered Fox to serve a two-day or three-day jail sentence. Again, those are the requirements of subsection (c)(1)(B) of the graduated intermediate sanction scheme, which the district court had to satisfy before revoking Fox's probation under subsection (c)(1)(C).

Concerning the State's contention that the district court's revocation of Fox's probation in 21CR84 was permissible under K.S.A. 22-3716(c)(8), a closer review of subsection (c)(8) does not support the State's contention. Subsection (c)(8) provides that "[i]f an offender is serving multiple probation terms concurrently, any violation sanctions imposed pursuant to subsection (c)(1), or . . . pursuant to subsection (c)(9), shall be imposed concurrently." Citing this language, the State concludes that because Fox was serving probation terms in 21CR84 and 21CR245 at the same time, he was serving his probation terms concurrently. It further concludes that subsection (c)(8)'s plain language supports that any sanction imposed on Fox in "one case applied in both cases."

Although neither party relied on this court's decision in *Allen*, the *Allen* court's interpretation of the language now codified in K.S.A. 22-3716(c)(8) is instructive. See 55 Kan. App. 2d at 89-90. Like Fox, Allen was serving probation in two separate criminal cases. After Allen stipulated to violating his probation conditions *at his two probation violation hearings for his two respective criminal cases*, the district court imposed the same statutorily authorized sanction on Allen. At Allen's second probation violation hearing, however, the district court ordered Allen to serve his otherwise statutorily authorized sanctions consecutively. 55 Kan. App. 2d at 87. Allen appealed to this court, arguing that K.S.A. 22-3716(c)(8) required the district court to impose concurrent sanctions on him for his probation violation. 55 Kan. App. 2d at 89-90.

27

The *Allen* court agreed. It determined that under K.S.A. 22-3716(c)(8)'s plain language, a district court must impose concurrent sanction terms if the following was true: "First, the offender [had to] be 'serving multiple probation terms concurrently.' Second, violation sanctions must [have been] imposed under one of the listed subsections," that is, under K.S.A. 22-3716(c)(1) or (c)(9). See 55 Kan. App. 2d at 89-90. In making this determination, the *Allen* court also defined the word concurrent. After reviewing multiple definitions of the word, it ruled that because Allen's "probation in both cases was happening at the same time," he was serving his probation in those cases concurrently. 55 Kan. App. 2d at 90.

So, the *Allen* court's holding would seem to support the State's position. Certainly, it supports that in most circumstances K.S.A. 22-3716(c)(8) requires the district court to impose concurrent probation violation sanctions on an offender who is serving probation in more than one criminal case simultaneously.

But there are critical factual distinctions between Fox's case and Allen's case. Notably, Allen never disputed the district court's statutory authority to revoke his probation in his two criminal cases. Instead, he challenged whether the district court could impose consecutive sanctions on him for violating his probation conditions in his two cases. 55 Kan. App. 2d at 89. Alternatively, in this case, Fox asserts that the district court violated K.S.A. 22-3716(c)(1)(A)-(C)'s graduated intermediate sanction scheme when revoking his probation in 21CR84 and 21CR245. He challenges whether the district court could rely on his Drug Court sanctions to revoke his probation in both cases. He does not challenge whether the Drug Court sanctions are valid.

Next, we point out that Fox was serving distinct probation terms for his aggravated assault conviction in 21CR84 and his possession of methamphetamine conviction in 21CR245. This, of course, means that Fox had distinct statutory rights under K.S.A. 22-3716(c)(1)(A)-(C)'s graduated intermediate sanction scheme. Regardless of whether the

28

Drug Court sanctions constituted valid intermediate sanctions against Fox in 21CR245, absent a probation violation hearing with a judicial finding that Fox's contested conduct violated his probation conditions in 21CR84, the Drug Court sanctions in 21CR245 could not legally constitute intermediate sanctions against Fox in 21CR84.

Here, the State asks this court to affirm the district court's revocation of Fox's probation in 21CR84 based on sanctions that the Drug Court imposed on Fox for violating unknown conditions of his probation in his possession of methamphetamine case. Fox had distinct statutory rights under K.S.A. 22-3716 in 21CR84 and 21CR245 before the district court could impose sanctions on Fox or revoke Fox's probation. In brief, the district court cannot sanction or revoke an offender's probation in one criminal case based solely on the fact that a probation violation was already established and sanctioned in a completely different criminal case. To sanction or revoke the offender's probation in two criminal cases, the district court must make separate findings in both cases that the offender's contested conduct violated the offender's probation conditions.

Regarding the State's argument that Fox failed to designate a record on appeal proving error, the State's argument focuses on Fox's emphasis on the lack of evidence that the district court imposed intermediate sanctions on him. The State argues that the "lack of record is not a reason to assume error." See *Meggerson*, 312 Kan. at 249 (appellant must designate a record on appeal affirmatively showing prejudicial error). But the State's argument ignores that if the district court imposed no intermediate sanctions on Fox, then the record on appeal would not contain anything addressing Fox's nonexistent intermediate sanctions. Also, Fox has included the probation revocation journal entries from his probation violation hearings in which the district court left the section documenting an offender's previous intermediate sanctions blank. So, although the State argues that nothing in Fox's records on appeal for 21CR84 or 21CR245 supports Fox's argument that the district court violated the graduated intermediate sanction scheme when revoking his probation terms, Fox has included evidence supporting his arguments.

29

In summary, as it concerns 21CR84, the record on appeal proves that the district court never sanctioned Fox under K.S.A. 22-3716(c)(1)(B) before it revoked Fox's probation under subsection (c)(1)(C) of the graduated intermediate sanction scheme. Also, although the State argues to the contrary, the district court could not rely on Fox's Drug Court sanctions from his probation in 21CR245 to revoke his probation in 21CR84. For each criminal case, an offender has distinct statutory protections under K.S.A. 22-3716. So, in 21CR84, the district court either needed to impose an intermediate sanction on Fox under K.S.A. 22-3716(c)(1)(B) or invoke an exception allowing it to immediately revoke Fox's probation under K.S.A. 22-3716(c)(7). Because it did not, we reverse the district court's revocation of Fox's probation in 21CR84.

Turning this court's focus to the district court's revocation of Fox's probation in 21CR245, we first note that Fox admitted that he violated his probation condition to timely complete the Drug Court program in his March 29, 2023 probation modification agreement. By signing off on the probation modification agreement, the district court sanctioned Fox by extending Fox's probation 11 months. And by modifying Fox's probation conditions, this sanction satisfied the first step of the graduated intermediate sanction scheme under K.S.A. 22-3716(c)(1)(A).

Next, the record on appeal in 21CR245 includes five sanctions and the transcript from a Drug Court hearing held on October 5, 2022. The Drug Court hearing transcript establishes that Fox admitted to violating several probation conditions in 21CR245. Following this admission, the Drug Court sanctioned Fox by ordering him to spend three days in jail and write a paper about honesty. In this paper, Fox needed to define honesty as well as "list at least five examples in [his] life where [he] should [have been] more honest." Also, when the Drug Court ordered this modification of Fox's release conditions in 21CR245, it explained that it was ordering the modification based on his ISO's advice.

While asking Fox to write a paper about honesty may seem insignificant, by asking Fox to perform this new task, the Drug Court added a condition to Fox's probation in 21CR245. Put another way, by asking Fox to write a paper about honesty, the district court modified Fox's probation release conditions. Because the Drug Court modified Fox's probation release conditions and ordered Fox to serve three days in jail, the district court satisfied the second step of the graduated intermediate sanction scheme under K.S.A. 22-3716(c)(1)(B). This then means that when the State later moved to revoke Fox's probation in 21CR245 for being discharged from Drug Court and generally making little progress completing his probation conditions, the district court had authority to revoke Fox's probation under K.S.A. 22-3716(c)(1)(C) because it had already sanctioned Fox under subsection (c)(1)(B). Thus, although the district court erred by revoking Fox's probation in 21CR84, the district court imposed the necessary intermediate sanctions under K.S.A. 22-3716(A)-(B) to revoke Fox's probation in 21CR245 under K.S.A. 22-3716(c)(1)(C).

*Conclusion*

We reverse the district court's revocation of Fox's probation in 21CR84, remanding this case to the district court for a new hearing. Because Fox readily admitted that he violated his 21CR84 probation condition to not use illegal drugs during his testimony at his original probation violation hearing, we hold that Fox is entitled to only a new dispositional hearing. As for Fox's probation in 21CR245, a review of the relevant statutes establishes that sanctions imposed by the Drug Court must comply with K.S.A. 22-3716. Thus, it is readily apparent that our Legislature intended Drug Court sanctions to constitute intermediate sanctions as meant under K.S.A. 22-3716(c). Here, because the record supports that the Drug Court and traditional district court followed K.S.A. 22-3716(c)(1)(A)-(C)'s graduated intermediate sanction scheme when revoking Fox's probation in 21CR245, we affirm the district court's revocation of Fox's probation in that case.

31

Affirmed in part, reversed in part, and remanded with directions.